Elvin W. **KRAWCZYK** and Gladys M. Krawczyk, Plaintiffs,

v.

**HARNISCHFEGER CORPORATION** and Harnischfeger Corporation Salaried Employees Retirement Trust, First National Bank of Chicago, Master Trustee, Defendants.

No. 89–C–1419.

United States District Court, E.D. Wisconsin.

Feb. 25, 1994.

---

Affirmed, 41 F.3d 276.

Mark Phillips, Brookfield, WI, for plaintiffs.

Thomas W. Scrivner and Chris J. Trebatoski, Michael, Best & Friedrich, Milwaukee, WI, for defendants.

## DECISION AND ORDER

CURRAN, District Judge.

■ Elvin and Gladys Krawczyk are suing Elvin's former employer, Harnischfeger Corporation, as well as Harnischfeger Corporation Salaried Employees Retirement Trust, and First National Bank of Chicago, master trustee, for what they allege are Elvin's accrued and unpaid pension benefits. *See* 29 U.S.C. § 1132(a)(1)(B). The Krawczyk's case was removed to this court from the Circuit Court of Waukesha County, Wisconsin. *See* 28 U.S.C. § 1441(b). After removal, the Plaintiffs amended their Complaint to restate their state law claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. This court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) & (f). In their Amended Complaint the Plaintiffs allege that the Defendants did not calculate Elvin's pension correctly because they did not include a $20,000.00 lump sum benefit Elvin received in 1983, as part of Elvin's total compensation. The Plaintiffs are seeking past due benefits, an order increasing future benefits, and punitive damages.[1] In the course of the briefing of motions for summary judgment, the Plaintiffs have suggested other avenues of relief under ERISA and state law and have demanded damages and statutory penalties for the Defendants' alleged breaches of duty and assorted misconduct.

The Defendants have answered and denied liability. They take the position that the decision of the Harnischfeger Pension and Investment Committee [Plan Committee] should be upheld because it is not arbitrary or capricious. After an opportunity for discovery, they moved for summary judgment on the ground that no material facts are in dispute and that they are entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(c). As a threshold matter, the court found that the Defendants had not complied with ERISA provisions governing administrative claims procedures prior to suit. *See* 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503–1(f). Therefore, the court denied the motion and remanded this action to the Harnischfeger Corporation Pension Committee for reconsideration. *See* Decision and Order of September 13, 1990. After the parties returned to this court, the Defendants again moved for summary judgment. The Plaintiffs, in response, raised new allegations[2] that Elvin had not received the proper Plan documents prior to making his retirement decision. He said he had only been furnished the plan summary, not the plan itself. Consequently, the court again remanded this matter to the Plan Committee,[3] but the Plaintiffs waived a rehearing and chose to proceed in this court on cross motions for summary judgment. The parties have completed supplemental briefing and the motions are now ready for decision.

## I. FACTS

■ The record shows that Elvin Krawczyk began work for Harnischfeger in 1941. *See* Transcript of Hearing Before the Pension and Investment Committee, Harnischfeger Industries, at Exhibit 3, ¶ 1.[4] In 1983,

---

**1.** Punitive damages are not available under ERISA. *See Harsch v. Eisenberg,* 956 F.2d 651, 660–61 (7th Cir.), *cert. denied sub nom. Bihler v. Eisenberg,* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *Medina v. Anthem Life Insurance Company,* 983 F.2d 29, 31–33 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993). Therefore, this relief is denied.

**2.** The court agrees with the Defendants' observation that: "As can be seen from the briefs submitted in this case, Mr. Krawczyk's claim has become somewhat of a moving target." Defendants' Reply Brief in Support of Their Motion for Summary Judgment at 12 n. 5.

**3.** *See* Opinion and Order of September 28, 1992.

**4.** The Defendants have not authenticated their evidence or exhibits by affidavit or any other

Elvin was working at Harnischfeger's Escanaba, Michigan plant as a salaried employee when he was told that he was being laid off and that the plant would be closed. At the time of the closing, Harnischfeger offered special termination benefits to certain employees, including Elvin. *See Id.* at Exhibit 1. Elvin elected to accept the early retirement plan under which he would receive a severance benefit of $20,000.00 (the equivalent of approximately six months salary) which he wanted paid in a lump sum in 1983. *See Id.* at Exhibit 8.

On October 14, 1983, prior to electing the termination benefits, Elvin asked to review a copy of the Harnischfeger retirement plan document. *See Id.* at Exhibit 7. Elvin's last day of work was October 31, 1983, and he received the lump sum on November 30. Harnischfeger did not supply a copy of the plan until December 7, 1983.

Under the Harnischfeger Corporation Salaried Employees Retirement Plan (the Plan), retirement benefits were calculated according to a formula that considered age at retirement, years of service, and the average compensation of the highest consecutive five full calendar years (out of the last ten) of employment. *See Id.* at Exhibit 4. Elvin's highest five years of compensation occurred in the last five years of his employment from 1979 through 1983, when his average annual salary was $37,614.24. *See Id.* at Exhibit 27. Using this figure and the other components of the Plan formula, Harnischfeger calculated Elvin's pension payment to be $1,598.62 per month. *See Id.* at Exhibits 28 & 30. Elvin claims that he was led to believe the entire $20,000.00 lump sum payment would be included in the pension calculation, thereby increasing his compensation for 1983, and increasing his average compensation for purposes of the Plan formula. Richard Schulze, Harnischfeger's Senior Vice President for Human Resources and Public Relations, on the other hand, says that Elvin was informed prior to his retirement that the full lump sum would not be included in the pension calculation. *See Id.* at 30–34. If the lump sum would have been included, the average salary over the highest five year period would have

been $41,778.29 and the monthly pension payment would have been $1,778.29. *See Id.* at 42–43. As it was, Harnischfeger included part of the $20,000.00 in the pension calculation in order to complete Elvin's salary for the year 1983.

On December 9, 1993, two days after he had received a copy of the Plan and Harnischfeger's pension calculation which excluded most of the lump sum payment, Elvin presented his claim to the Harnischfeger Plan Committee. *See Id.* at Exhibit 15. After the Plan Committee denied his claim, Elvin commenced this action.

Because the Plan Committee's notice to Elvin of the denial of his claim did not adequately specify the grounds for the denial or inform him of any appeal rights and because Elvin argued that he was not able to present material evidence because of the deficient notice, this court remanded his claim to the Plan Committee to determine whether Elvin was eligible for increased benefits. *See* Opinion and Order of September 13, 1990. *See also Wolfe v. J.C. Penney Company,* 710 F.2d 388, 392 (7th Cir.1983). In compliance with the court's Order, the Plan Committee sent a series of letters to Elvin and his counsel, informing them of the reasons for the previous denial and informing them of Elvin's right to another hearing. That hearing took place on May 8, 1991. Harnischfeger produced two witnesses—Jeralym Meyer, Harnischfeger's Director of Employee Benefits, and Richard Schulze, Harnischfeger's Vice President—Human Resources. Elvin's counsel presented Elvin's affidavit and made an oral statement. Elvin himself did not testify.

At the hearing Meyer stated that the Harnischfeger Plan definition of "compensation" is:

> ... the total amount received by the employee for such calendar year exclusive of prizes, awards and allowances for foreign service....

Transcript of Hearing Before the Pension and Investment Committee, Harnischfeger Industries, at 13. The definition of "final

means. Nevertheless, the Plaintiffs have not ob- jected, so the court will rely on the documents.

average compensation" for purposes of computing a pension benefit is:

> ... the highest average compensation paid to participants during any five consecutive calendar years during the ten calendar years preceding his retirement or termination of employment.

*Id.* Meyer explained that Harnischfeger considered severance pay to be income replacement and that it was the company's practice to count only that portion of the severance benefit that would complete a calendar year for the purpose of calculating the pension benefit. *See Id.* at 15–17. She also testified that this practice was followed with all employees at the Escanaba plant who received the severance benefit. *See, e.g. Id.* at 18–20 & Exhibit 10. Schulze testified that including the severance benefit in the pension calculation would have provided a windfall to the recipient and would have an adverse impact on the Plan and the other participants. *See Id.* at 31.

Elvin's counsel argued that the Plan definition of "compensation" did not exclude severance pay and that, therefore, it should be included in the year paid. He also claimed that Elvin had detrimentally relied upon his belief that the entire severance amount would be included in the pension benefit calculation. Because of what he calls Harnischfeger's "misrepresentations," Elvin says that he elected to take the severance benefit as a lump sum, thereby incurring additional income tax liability in 1983. He also suggests that he would have chosen a different retirement plan or even termination and unemployment compensation had he not believed that the severance pay would increase his pension benefit if taken as a lump sum during his last year of employment.

After deliberating, the Plan Committee arrived at the following conclusions:

(1) The definition of compensation in the Harnischfeger Corporation Salaried Employee Retirement Plan in effect at the date of retirement of Elvyn [sic throughout] Krawczyk does not, and was not intended to, include severance pay whether paid in monthly installments or in a lump sum.

(2) The Company clearly informed Elvyn Krawczyk that his lump sum severance pay would not be included in his compensation calculations for the purpose of determining pension payments.

(3) The Company treated Elvyn Krawczyk fairly and in good faith and did not mislead him with regard to his pension entitlement. Elvyn Krawczyk was given the option to take severance pay in a lump sum as an accommodation to him and should not be entitled to a pension windfall by accepting the lump sum option.

(4) The lump sum severance payment to Elvyn Krawczyk was properly excluded from his pension calculation. The Company exercised its discretion in an appropriate manner consistent with its past practice in granting to Elvyn Krawczyk pension credit for the portion of his severance pay that would have been paid to him in 1983 if he had elected to receive his severance pay in monthly installments.

[Plaintiffs'] Supplemental Brief at Exhibit.[5] On May 23, 1991, the Committee sent Elvin a letter denying his claim. This letter provided that:

You are hereby informed that the Pension and Investment Committee of Harnischfeger Corporation has decided to deny the claim of Elvin Krawczyk for increased pension benefits based on the inclusion of severance pay paid in 1983 as salary for purposes of his pension entitlement calculation.

The Committee conducted a hearing on May 8, 1991 at which Mr. Krawczyk's counsel presented to the meeting the documents, factual conclusions and legal arguments supporting Mr. Krawczyk's claim. At this time, the Committee also heard a similar presentation on behalf of Harnischfeger Corporation.

Enclosed is an extract from the minutes of the Committee's meeting on May 8, 1991 which details the Committee's analysis of the Krawczyk claim. The substance of the Committee's decision was its interpretation

---

5. The Plaintiffs' exhibits appended to their sup- plemental brief are unnumbered.

of "Compensation" appearing in Subsection (h) of Section 1.1 of the Harnischfeger Corporation Salaried Employees Retirement Plan as Amended and Restated effective November 1, 1976. The Committee concluded that the lump sum severance pay was not compensation received by Elvin Krawczyk for the calendar year 1983 and therefore is not included in his Final Average Compensation as defined in subsection (t) of Section 1.1 for purposes of computing his Normal Retirement Pension pursuant to Section 5.1.

The Committee views the hearing on May 8, 1991 as the final administrative review available to Elvin Krawczyk under the Plan.

[Plaintiffs'] Supplemental Brief at Exhibit.

After receiving this decision, the Plaintiffs returned to the district court where the court again remanded the Krawczyk claim to the Plan Committee because Elvin raised new complaints about irregularities in the administrative proceedings. *See* Opinion and Order of September 28, 1992. Despite their complaints, the Plaintiffs waived their opportunity for a rehearing at the administrative level. The court then gave the parties an opportunity to rebrief the issues in light of intervening legal developments.

## II. *LEGAL STANDARDS FOR SUMMARY JUDGMENT*

Rule 56(c) of the Federal Rules of Civil Procedure provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As the Supreme Court has noted, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corporation v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 1) (citation omitted). "In considering the motion,

the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The court must first look to the substantive law governing the case to determine which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In this case the controlling substantive law is found in the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1061–1461.

Once the court has determined what facts are material, it must then determine whether there is a genuine issue as to any material fact. An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a finder of fact could reasonably grant judgment for the party having the burden of proof. *See Id.* at 248, 106 S.Ct. at 2510. At this stage, "the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510.

The party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion. *See Celotex v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2553. The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. The burden then shifts to the nonmoving party to show that there is a genuine issue of fact for trial. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In considering a motion for summary judgment, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. However, in resisting a motion for summary judgment, the nonmoving

party may not rely upon mere allegations or denials contained in pleadings or briefs.

When the moving party does not have the burden of proof at trial, the moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. When the moving party bears the ultimate burden of proof on an issue, it meets its burden by showing sufficient evidence to justify a judgment in its favor. This inquiry implicates the substantive evidentiary standard of proof that would apply at a trial on the merits.

 When, as in this case, both sides move for summary judgment, the court must apply the same standard for both motions. Counter-motions for summary judgment do not automatically empower the court to dispense with the determination of whether questions of material fact exist. *See Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341, 349 (7th Cir.1983), *cert. denied,* 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983). Merely because both parties move for summary judgment does not mean that one party must prevail. If neither party demonstrates that summary judgment in its favor is warranted, neither motion will be granted. *See Home Insurance Company v. Aetna Casualty & Surety Company,* 528 F.2d 1388, 1390 (2d Cir.1976) (per curiam).

## III. *DISCUSSION AND DECISION*

### A. STANDARD OF REVIEW

Applying these standards, the court must determine whether or not the Krawczyks are entitled to the relief they seek under the governing law, ERISA's section 1132(a)(1)(B),[6] which provides that:

A civil action may be brought—

 (1) by a participant or beneficiary—

. . . .

 (b) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). The administrator of the Harnischfeger Plan determined at the rehearing held on May 8, 1991, that Elvin is not entitled to relief.

 This court has already ruled that the determination of the Harnischfeger Plan Committee should be evaluated according to the "arbitrary and capricious" standard because the Plan explicitly entrusts decisions concerning the construction and interpretation of the Plan provisions as well as eligibility determinations to the Plan administrator. *See* Opinion and Order of September 13, 1990. *See also Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1295–96 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993).

The parties have been allowed to rebrief this issue, but the Plaintiffs, who argue that they are entitled to *de novo* review, have presented no argument or evidence that the court should overrule its earlier decision. The Plaintiffs have made no showing that the Plan Committee was motivated by self-interest or bias. *Cf. Fought v. Evans Products Company Racine Pension Plan Agreement,* 966 F.2d 304, 306 (7th Cir.1992). Rather, they maintain that, because the statutory notice and claim procedure were not followed

---

**6.** ERISA provides that a claim for benefits made under 29 U.S.C. § 1132 resulting in a money judgment "shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d)(2). In their Amended Complaint, the Krawczyks named Harnischfeger Corporation Salaried Employees Retirement Trust, "a trust established for the benefit of a pension plan," but did not name the Plan itself as a defendant. *See* Amended Complaint at ¶ 3. The Plan at issue is called the "Harnischfeger Corporation Salaried Employees Retirement Plan." *See* Affidavit of Richard W. Schulze at Exhibit B. This Plan was terminated on July 31, 1984. *See Id.* Although the Defendants raised the affirmative defense of failure to join necessary parties, *see* Answer of Defendant First National Bank of Chicago at ¶ 25; Answer of Defendants Harnischfeger Corporation and Harnischfeger Corporation Salaried Employees Retirement Trust at ¶ 25, the parties failed to address the issue of whether the Plan is a necessary party. Because no benefits are being awarded, the court need not resolve this issue.

at the first hearing, the court should accord no deference to the Committee decision. They have presented no authority for this position and, even if all their allegations are true, they have been given the opportunity for a rehearing and have not demonstrated how the outcome would have been different if the statutory procedures had been strictly followed from the beginning. *See Kleinhans v. Lisle Savings Profit Sharing Trust,* 810 F.2d 618, 621–22 (7th Cir.1987) ("a participant is not entitled to a substantive remedy for establishing a procedural violation on the part of the administrator").

In defining the arbitrary and capricious standard, the Seventh Circuit has explained that:

> The arbitrary and capricious standard holds that a trustee's decision shall not be overturned on a § 1132(a)(1)(B) matter, absent special circumstances such as fraud or bad faith, if "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985). "[A] court will not set aside the denial of a claim if the denial is based on a reasonable interpretation of the relevant plan documents." *Shull v. State Machinery Co., Inc. Employees Profit Sharing Plan,* 836 F.2d 306, 308 (7th Cir. 1987). Nor will it do so where the trustee has based its decision " 'on a consideration of the relevant factors' " that encompass the " 'important aspect[s] of the problem' " before it. *See Reilly v. Blue Cross & Blue Shield United of Wis,* 846 F.2d 416, 420 (7th Cir.) (quoting *Motor Vehicle Mfr's Ass'n of the U.S., Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). If the trustee makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, *i.e.* one that makes a "rational connection" between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached, then the trustee's decision is final. *See Smart v. State Farm Ins. Co.,* 868 F.2d 929, 936 (7th Cir.1989). *Cf. Van Boxel v. Journal Co. Employees'*

*Pension Trust,* 836 F.2d 1048. 1049–53 (7th Cir.1987) (examining arbitrary and capricious standard in detail).

*Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138, 1142–43 (7th Cir.1990).

## B. PLAN COMMITTEE DECISION

■ Having ruled on the proper standard of review, the court must now decide whether the Harnischfeger Plan Committee's decision to deny Elvin's claim for increased pension benefits by excluding Elvin's full lump sum severance benefit from his 1983 compensation was arbitrary and capricious. This standard only requires that the Plan Committee's decision make sense. If the Committee's decision was based on a reasonable interpretation of the Plan and an adequate consideration of the relevant factual circumstances, the decision will not be disturbed even if the Krawczyks' interpretation could have been permissible under the Plan. *See Anderson v. Operative Plasterers' and Cement Masons' International Association, Local No. 12 Pension and Welfare Plan,* 991 F.2d 356, 358 (7th Cir.1993); *Russo v. Health, Welfare & Pension Fund, Local 705, International Brotherhood of Teamsters,* 984 F.2d 762, 766 (7th Cir.1993).

■ The parties' dispute centers on the meaning of the term "compensation," as used in the Plan. Resolution of this dispute is a matter of contract interpretation which is governed by federal common-law rules. *See Hammond v. Fidelity and Guaranty Life Insurance Company,* 965 F.2d 428, 430 (7th Cir.1992). When one party files a motion for summary judgment requiring interpretation of a contract, the district court must determine (1) if the contract is ambiguous or unambiguous and (2) if it is ambiguous, whether after consideration of the extrinsic evidence, there are any triable issues of fact. If the undisputed extrinsic evidence conclusively establishes the intent of the Plan, summary judgment may be granted in favor of the party whose interpretation prevails. *See Hickey v. A.E. Staley Incorporated,* 995 F.2d 1385, 1389–90 (7th Cir.1993).

In interpreting the term "compensation," the Plan Committee first considered the language of the Plan itself. The Plan's Section 1.1(h), which appears in a section entitled "Definitions and Construction," provides that "compensation" is:

> An amount determined as of December 31st of each calendar year. For any year prior to 1971 compensation is an amount equal to the sum of (i) the Participant's regular salary rate in effect on September 1st, annualized; (ii) compensation earned during the preceding Plan Year; and (iii) commissions paid during the preceding Plan Year. For any calendar year after 1970 compensation is the total amount received by the employee for such calendar year, exclusive of prizes, awards, and allowances for paid foreign service after December 31, 1976, provided, however, that the amount of compensation for the calendar year 1971 shall not be less than compensation as determined under the method in effect for the calendar year 1970.

Affidavit of Richard W. Schulze at Exhibit B.

Harnischfeger did not furnish a copy of the Plan itself to Elvin prior to his election of the severance benefit. Instead, Elvin says he relied upon definitions found in the Plan Summary and two other documents. The Plan Summary contains the following definition of compensation:

> The Plan document specifically defines many of the terms used in this booklet. Briefly, the term **Compensation** means after 1970 your actual calendar year gross earnings paid except for prizes, awards and after 1976, foreign allowances. **Final Average Monthly Compensation** means your average of annual compensation received during the last ten (10) consecutive calendar years before your retirement or termination divided by twelve. However, if you retire or terminate after April 30, 1979, your **Final Average Monthly Compensation** means your highest average annual compensation paid for any five (5) consecutive calendar years during the last ten calendar years before your retirement or termination divided by twelve.

Transcript of Hearing Before the Pension and Investment Committee, Harnischfeger Industries, at Exhibit 4.

The Plan Committee takes the position that, under either definition, compensation is limited to "earnings" for a "calendar year." The Committee points out that the severance benefit is not earnings, but that the payment was intended to replace Elvin's earnings for approximately six months. The Defendants point out that the Plan definition of "final average pay" specifies that the final average pay must be calculated by using five (out of ten) of the last consecutive calendar years of pay preceding retirement. In this case Elvin's last day of work was October 31, 1983, and he then received vacation and holiday pay until December 14, 1983. Thus, 1982 was the last full calendar year Elvin completed. However, in accord with past practice, Harnischfeger applied part of the severance benefit to Elvin's 1983 compensation to complete his annual salary for that calendar year.[7] Nevertheless, pursuant to a company practice, that portion of the lump sum which would replace Elvin's salary to complete the year 1983 was included in the pension calculation. Elvin's view is that, under the plain language of the Plan documents, a severance payment is not specifically excluded from the definition of compensation; therefore, it must be included.

Because the term "compensation" is not comprehensively defined by the Plan documents and because it is subject to more than one arguable interpretation, the court concludes that it is ambiguous and that the Plan Committee justifiably considered extrinsic evidence in making its ultimate determination. *See Hickey*, 995 F.2d at 1389; *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 586 (1st Cir.1993); *Taylor v. Continental Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1234 (3rd Cir.1991); *Lumpkin v. Environdyne Industries, Inc.*, 933 F.2d 449, 456 (7th Cir.),

7. Originally, Elvin's termination had been set for June of 1983, and the six months of severance pay would have completed the year, so that it all would have been counted in the pension calculation pursuant to the Harnischfeger practice of including that part of the severance benefit which would complete the year.

*cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991). Once a term has been held to be ambiguous as a matter of law, the plan committee, and ultimately the court, may consider extrinsic evidence such as the intent of the plan's sponsor; whether the claimant's interpretation results in substantial unanticipated costs to the plan; and whether the administrator has given the plan a uniform construction. *See Hickey,* 995 F.2d at 1390–93; *Kennedy v. Electricians Pension Plan, IBEW No. 995,* 954 F.2d 1116, 1121 (5th Cir.1992).

At the administrative hearing Elvin's counsel argued that his interpretation is supported by the definition of "compensation" found in other company documents. He maintained that Elvin relied on the definition of "compensation" found in Harnischfeger Management Policy Guide BP–5.2 (Subject: Harnischfeger Salaried Employees Retirement Plan (As Amended and Restated Again Effective November 1, 1976)), which states that:

> Compensation after 1970 is yearly W–2 earnings divided by twelve and the final average is for the last 10 calendar years. Terminations after April 30, 1970, will have the final average calculated using the high 5 consecutive years during last 10 calendar years.

Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Motion for Summary Judgment at Exhibit 7. The Plaintiffs reason that, because the entire lump sum was included in Elvin's 1993 W–2 earnings, it should be considered compensation for pension calculation purposes.

Elvin also says that he relied upon the following passage from a letter from Harnischfeger to fellow employee John Sankovitch. In the letter, Lloyd S. Clifford, Har-

nischfeger's Corporate Director of Compensation, explains that:

> The Plan further defines compensation:
>
> "An amount received from an Employer determined as of December 31st of each calendar year. For any year prior to 1971 Compensation is an amount equal to the sum of (i) the Participant's regular salary rate in effect on September 1st, annualized; (ii) compensation earned during the preceding Plan Year. For any calendar year after 1970 compensation is the total amount received by the employee for such calendar year, exclusive of prizes and awards, allowances for paid foreign service after December 31, 1976, provided, however, that the amount of compensation for the calendar year 1971 shall not be less than compensation as determined under the method in effect for the calendar year 1970. For any calendar year after 1970, Compensation shall also include bonuses, whether paid or accrued."

*Id.* at Exhibit 8.[8]

In support of their position, the Plaintiffs additionally point out that a Harnischfeger Economic Severance Plan,[9] which was in effect at the same time but which did not govern Elvin's situation, specifically stated that supplemental unemployment benefits "are not earnings for pension calculation purposes." Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Motion for Summary Judgment at Exhibit 10. In contrast, no such statement was included in the Plan which governed Elvin's severance benefit.

During the administrative proceedings, the Harnischfeger Defendants presented testimony that, in offering the early retirement benefit, the Company never intended to bestow a pension windfall on a beneficiary such as Elvin. *See* Transcript of Hearing Before the Pension and Investment Committee,

---

8. Elvin could not have relied on this document prior to electing the lump sum. This letter is dated November 16, 1983, which was two weeks after October 31, 1993, when Elvin made his election to receive the lump sum before the end of 1983. *See* Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Motion for Summary Judgment at Exhibit 2.

9. Supplemental unemployment benefits under this plan were meant to be added to state unemployment benefits so that an eligible employee would receive 100% of his or her former pay for up to twenty-four weeks, depending upon length of prior service.

Harnischfeger Industries at 31. Elvin and his fellow employees were given the choice of taking an amount which was roughly equivalent to six months of salary in a lump sum or in periodic payments spread out until the recipient reached age 62. Elvin's interpretation would benefit him at the expense of the plan participants who had chosen to take their severance benefit over a period of years.

The Defendants also presented evidence that Harnischfeger consistently treated severance pay as an item to be excluded from the pension calculation, even though severance benefits are not mentioned as exclusions in any pension document definition. *See Id.* at 17–21 and Exhibits 3A, 3B and 3C. Harnischfeger's director of employee benefits testified that she knew of no instance in which a lump sum severance payment had been considered as earned compensation for pension calculation purposes. *See Id.* at 17.

The Seventh Circuit has not yet decided whether evidence which was not presented at the administrative level can be considered by the district court. *See Petrilli v. Drechsel,* 910 F.2d 1441, 1448 (1990). But, although the Plaintiffs complain that they have been prevented from presenting relevant evidence, they have not identified any additional evidence they would present. The evidence they did offer during the administrative proceeding is insufficient to raise a material issue of fact as to the intended meaning of "compensation" in the Harnischfeger Plan. They presented no evidence that other retiring employees were treated differently or that the offer of a severance payment included an increase in pension payments. They presented no competent evidence of bad faith, concealment, or an abuse of discretion on the part of the Defendants.

The Defendants, on the other hand, offered testimony to explain the ambiguous term "compensation." Their witnesses testified that total severance payments were never treated as compensation for pension calculation purposes [10] and pointed out that Harnischfeger did not intend to create a windfall for employees in Elvin's position to the detriment of the Plan assets.[11] The record shows that the Plan Committee considered all important aspects of this issue and that its evaluation of the evidence offered was not implausible. In short, the Plan Committee's decision was reasonable. *See Lister v. Stark,* 942 F.2d 1183, 1189 (7th Cir.1991).

Recently, the Seventh Circuit affirmed another plan committee's conclusion that "compensation" for pension calculation purposes does not include extraordinary payments. In *Licciardi v. Kropp Forge Division Employees' Retirement Plan,* 990 F.2d 979 (7th Cir. 1993), a former chief operating officer of the company received a substantial lump sum from the company in settlement for his claims for additional compensation for past services rendered. The court ruled that the lump sum was not "earnings" for purposes of calculating the claimant's pension because there was no affirmative evidence that the settlement was intended to affect the pension. *See Id.* at 983. The parties had failed to deal with the question of what effect the lump sum settlement would have on pension rights in their mutual releases. Therefore, the court concluded that it was reasonable to assume that the settlement was to have no effect on the plaintiff's pension.

As in *Licciardi,* the dispute in the Krawczyks' case arose because the Harnischfeger severance plan did not address the pension implications of the severance terms. In order to foreclose such disputes in the future, the Seventh Circuit has recommended that:

> To head off (or at least simplify) future litigation, employers who have reason to make extraordinary payments to employ-

---

10. Uniform interpretation and application of plan rules are important factors in deciding whether a denial of benefits is arbitrary and capricious. *Russo v. Health, Welfare & Pension Fund, Local 705, International Brotherhood of Teamsters,* 984 F.2d 762, 766 (7th Cir.1993). *See also Fuller v. CBT Corporation,* 905 F.2d 1055, 1060 (7th Cir.1990); *Sly v. P.R. Mallory & Company, Inc.,* 712 F.2d 1209, 1213 (7th Cir.1983)

(uniform interpretation defeats arbitrary and capricious claim).

11. "An interpretation that would result in substantial unanticipated costs may be less likely to be legally correct." *Kennedy v. Electricians Pension Plan, IBEW # 995,* 954 F.2d 1116, 1123 (5th Cir.1992).

ees should describe them in language that indicates their classification under the company's pension plan.

*Licciardi,* 990 F.2d at 984.

Returning to the *Krawczyk* case, the court concludes that no genuine issues of material fact exist which would preclude summary judgment. Consequently, because the May 9, 1991 decision of the Pension and Investment Committee, Harnischfeger Industries, was reasonable and not arbitrary and capricious, the court will grant summary judgment in favor of the Defendants on the Plaintiffs' claims for increased benefits under 29 U.S.C. § 1132(a)(1)(B).

## C. ESTOPPEL

Throughout this litigation the Plaintiffs have argued that they should be awarded the pension increase or damages because, when Elvin elected the lump sum payment, he relied upon Harnischfeger's "misrepresentation" that the $20,000.00 would be added to his 1983 compensation. Elvin does not allege that anyone at Harnischfeger made any affirmative representations concerning pension treatment of the severance payment. Rather, he says that no one told him anything, so he believed that he was safe in assuming that

the lump sum would be treated as compensation for pension calculation purposes. The Defendants have produced the affidavit of Richard Schulze, Vice President—Human Resources for Harnischfeger Corporation, who says that he explicitly told Elvin that the severance benefit would not be counted as 1983 compensation. *See* Affidavit of Richard W. Schulze at ¶ 7. Elvin denied that any such conversation took place, so for purposes of resolving this motion, the court will credit Elvin's version, even though the Plan Committee found the Schulze version credible.[12]

Elvin contends that he relied to his detriment on Harnischfeger's misrepresentation by omission. He says that he would have chosen to have the severance payment made in installments or even chosen termination with unemployment compensation rather than accept the entire severance benefit in 1983. He also complains that the entire $20,000 was added to his taxable income in 1983, thereby increasing his tax liability.

ERISA preempts any state law estoppel claim the Krawczyks might be trying to assert.[13] *See District of Columbia v. Greater Washington Board of Trade,* —— U.S. ——, ——, 113 S.Ct. 580, 582, 121 L.Ed.2d 513 (1992); *Pohl v. National Bene-*

12. The Seventh Circuit has not decided whether factual or credibility determinations of a Plan administrator must be reviewed deferentially or *de novo. See Petrilli v. Drechsel,* 910 F.2d 1441 (7th Cir.1990).

13. Throughout this litigation the Plaintiffs have stubbornly refused to acknowledge the well-established body of law in which courts have ruled that ERISA preempts state common law causes of action in most cases involving pension plans. In their final "Supplemental Brief," the Plaintiffs argue that they are seeking damages for detrimental reliance and explain that:

Krawczyk's detrimental reliance claim is *not* equivalent to an action for the monthly benefits improperly denied him under the Plan in which he was a participant. In that action he claims the loss of $200 per month in pension benefits. He brings this cause of action not as a participant seeking recovery of a higher monthly pension benefit FROM THE PLAN, but as an employee seeking economic damage from his EMPLOYER.

. . . . .

The predicate, therefore, for his damages is not the wrongful benefit denial but rather the alle-

gation that Krawczyk detrimentally relied on false financial information negligently communicated to him by his employer while he was engaged in the process of deciding whether to accept his employer's pending termination offer, take early retirement, or accept unemployment compensation (which would have amounted to approximately $18,000) and wait 18 months until age 62 to retire. By giving and/or withholding information, Harnischfeger misled Krawczyk into early retirement.

The premise underlying this action is that Krawczyk was deceived by the verbal statements, written statements, lack of notification or disclosure as well as the actions accompanying these misrepresentations taken by his employer. The fact that the subject of the deception concerned pension benefits is only incidental and not essential to Krawczyk's cause of action.

[Plaintiffs'] Supplemental Brief at 19–20.

Although the Krawczyks attempt to sidestep the issue, they are actually seeking benefits under the Plan. As such, their state law claims are preempted by ERISA. Their contrary position is not supported by the governing law. *See e.g., Thomason v. Aetna Life Insurance Company,* 9 F.3d 645, 646–47 (7th Cir.1993).

*fits Consultants, Inc.,* 956 F.2d 126, 127 (7th Cir.1992); *Bartholet v. Reishauer, A.G. (Zurich),* 953 F.2d 1073, 1075 (7th Cir.1992). Congress, in passing the ERISA statutes, expected that "a federal common law of rights and obligations under ERISA-regulated plans would develop." *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). However, the emerging ERISA common law will not always provide a substitute federal remedy for the preempted state law claim. *See Pohl,* 956 F.2d at 128. Thus, a threshold question is whether the Krawczyks' estoppel claim can be maintained under ERISA.

In *Black v. TIC Investment Corporation,* 900 F.2d 112 (7th Cir.1990), the Seventh Circuit held that: "estoppel principles are applicable to claims for benefits under unfunded single-employer welfare benefit plans under ERISA." *Id.* at 115. However, the court went on to say that: "We express no opinion as to the application of estoppel principles in other situations." *Id.*

 As the court of appeals explained, there are "two types of ERISA plans: pension plans, which are funded and have strict vesting and accrual requirements; and welfare plans ... which have no such requirements." *Id.* at 115, (citing *Young v. Standard Oil (Indiana),* 849 F.2d 1039 (7th Cir.), *cert. denied,* 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988)). Courts are more apt to allow equitable estoppel when a participant or beneficiary is making a monetary claim on an unfunded welfare plan because: "In the case of an unfunded welfare plan, there is no particular fund which is depleted by paying benefits." *Id.* at 115.

During the pendency of the instant case, the continuing validity of the *Black* holding was cast into doubt by two subsequent decisions. *See Pohl,* 956 F.2d at 128; *Bartholet,* 953 F.2d at 1073. *But see Russo v. Health, Welfare & Pension Fund, Local 705, International Brotherhood of Teamsters,* 984 F.2d 762, 767 (7th Cir.1993); *Vershaw v. Northwestern National Life Insurance Company,* 979 F.2d 557, 559 (7th Cir.1992). Very recently, the Seventh Circuit affirmed the continuing validity of *Black* in *Thomason v. Aetna Life Insurance Company,* 9 F.3d 645,

647–48 (7th Cir.1993) ("*Black* is still the law in this Circuit"). Therefore, the court must decide whether the Plaintiffs can seek an estoppel remedy under *Black.*

In the instant case the Harnischfeger Plan is a funded Plan. *See* Supplementary Brief in Support of Defendants' Motion for Summary Judgment at 12. Moreover, the Krawczyks are seeking benefits from a pension fund, not a welfare benefit fund. An increased payment to the Krawczyks could affect the actuarial soundness of that fund to the detriments of the other participants and beneficiaries. Therefore, it does not appear that the Krawczyks' claim fits within the narrow holding of *Black.* The Seventh Circuit has not recognized the availability of an estoppel remedy when payment would come from a funded pension plan, and no extraordinary circumstances warrant allowing such a claim in this case.

 Even if this circuit would allow the Krawczyks to seek a remedy under an estoppel theory, they have not established the elements of such a claim. A party asserting estoppel must show that: (1) the opposing party knowingly misrepresented or concealed a material fact; (2) the complaining party, not knowing the truth, reasonably relied on that misrepresentation or concealment; (3) the complaining party suffered detriment; and (4) the complaining party had no knowledge or convenient means of ascertaining the true facts which would have prompted it to react otherwise. *See Loyola University of Chicago v. Humana Insurance Company,* 996 F.2d 895, 902 (7th Cir.1993).

 In this case the Plaintiffs claim that the Defendants did not inform Elvin that the lump sum benefit would not be included in the pension calculation. They do not allege that the Defendants made any affirmative misrepresentations. In general, ERISA does not recognize oral (or silent) modifications of a written benefit plan. *See Lister v. Stark,* 890 F.2d 941, 946 (7th Cir.1989), *cert. denied,* 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990). However, the Eleventh Circuit has applied estoppel principles to various ERISA benefit plans if the oral statement involved was an interpretation, rather

than a modification, of the plan. *See, e.g., Kane v. Aetna Life Insurance,* 893 F.2d 1283 (11th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990).

Under the Eleventh Circuit's analysis, a plaintiff must prove that the relevant provisions in the plan were ambiguous and that he relied on an oral interpretation of that ambiguous provision. *See Simmons v. Southern Bell Telephone & Telegraph Company,* 940 F.2d 614, 617–18 (11th Cir.1991). The Seventh Circuit has not decided whether to adopt or reject this type of claim. *See Schoonmaker v. Employee Savings Plan of Amoco Corporation and Participating Companies,* 987 F.2d 410, 413–14 (7th Cir.1993); *Russo,* 984 F.2d at 768.

Even if the Seventh Circuit would adopt the Eleventh Circuit's position, the Krawczyks would have difficulty fitting within its scope, because they did not rely on any oral interpretations of an ambiguous provision; instead, they relied on mere silence to confirm their own interpretation. It is the Plaintiffs' position that the word "compensation" in the Plan documents was not ambiguous, but that the plain meaning of the term included only what was not specifically excluded by the Plan definitions.

Assuming that one can base a claim on mere silence rather an active concealment (of which there has been no showing) or affirmative misrepresentation, the Krawczyks have not established that their reliance was reasonable because Elvin had a convenient means of ascertaining the true facts. If, as he alleges, his interpretation of the term "compensation" was crucial to his retirement decision, he could have and should have asked the Defendants whether his interpretation was correct. Common sense should have indicated that Elvin's interpretation was too good to be true. No employee would have accepted the option of installment payment of the severance benefit, if he or she could have taken a lump sum and increased pension benefits instead. The Plaintiffs have produced no evidence of any other employee who was allowed to add the entire lump sum to the pension calculation, so they could not have relied on similar treatment. Significantly, Elvin, who did not testify at the 1991 administrative hearing before the Plan Committee, did not allege at any time that he ever asked anyone from Harnischfeger if his own interpretation of the pension benefit calculation was based on the same figures contemplated by the Plan administrator. Consequently, the court concludes that the Krawczyks have not established reasonable reliance.

Finally, the Plaintiffs have not shown that they suffered detriment. In the most recent incarnation of their claim, the Krawczyks describe their detriment as follows:

Krawczyk's damages are alleged to arise from his decision to take early retirement and a lump sum Twenty Thousand Dollar severance payment in 1983. Krawczyk claims he chose to retire early based on the projected monthly pension benefit he was to receive. He would have been entitled to an even higher monthly benefit had he waited 18 months to reach age 62. By waiting a mere 18 months, he would have avoided the .9100 reduction factor.

However, because Harnischfeger failed to advise him that they "intended" to interpret the Plan language regarding compensation so as to reduce his projected monthly benefit, he took early retirement. Krawczyk has lost Four Hundred ($400.00) Dollars per month since 1985 in retirement benefits plus future benefits in an equal monthly amount. This is $200.00 per month more than his claim under the severance/early retirement plan.

. . . .

The gravamen of Krawczyk's separate claim is that he would not have elected to accept his employer's buy-out offer (which included a $20,000 lump sum payment) and taken early retirement in 1983 had his employer provided him with accurate rather than erroneous information about the financial consequences of accepting that offer. Therefore, he asks the Court under the authority of *Black, supra,* to either equitably estop Harnischfeger from denying his claim for an additional $200.00 per month or, in the alternative under this cause of action, to award him an additional $400.00 per month as the amount of monthly benefit he would have received

had he waited 18 months to retire (retroactive to 1985). It is evident from the damage claim alone that these are two distinct claims!

[Plaintiffs'] Supplemental Brief at 19–21.

the Defendants, in turn, point out that:

Mr. Krawczyk claims that he would have waited until 62 to retire to avoid the early retirement factoring had he known that the lump sum was not to be included in his benefit calculation. That argument is no argument at all. The factor in question is an actuarial adjustment of the same benefit amount to reflect earlier receipt of the income stream. If he would have waited until 62 to receive benefits the amount of benefits received per month would be higher but he would not have received two years of benefit payments. As a result, the total lifetime benefit paid under either option would be the same.

Defendants' Reply Brief in Support of Their Motion for Summary Judgment at 14–15 n. 6 (citations omitted).

Although the Plaintiffs have retained an accountant as an expert witness, *see* Notice of Expert Witness (filed July 2, 1990), they have not made a showing that the Defendants' explanation is erroneous and that they suffered any economic harm by electing the lump sum benefit payout or by not electing termination and collecting unemployment compensation. Therefore, the court has no basis to find that Elvin suffered detriment by selecting the lump sum option.

■ Elvin also alleges that: "Had I been informed that the severance would not be included in my pension calculations, I would not have elected to receive it any [sic] pay

taxes on it in 1983." Affidavit of Elvin W. Krawczyk at ¶ 6. Krawczyk has not submitted any computations or tax tables showing how his tax rates were actually affected for the year 1983. A tax loss is a complicated computation which must take into account such factors as the time value of a lump sum available for investment and inflation. Without these figures the court cannot conclude that the Krawczyks suffered any monetary loss. Even if they had, the loss would not be recoverable as a separate item of damages. Lost tax benefits are extra contractual and thus, do not fall within the "appropriate equitable relief" available to redress violations of ERISA. *See Novak v. Andersen Corporation*, 962 F.2d 757, 760–61 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2928, 124 L.Ed.2d 678 (1993); *Farr v. U.S. West, Inc.*, 815 F.Supp. 1364, 1375–76 (D.Or.1992).

In sum, because the Krawczyks have failed to make a showing that they reasonably relied on the alleged misrepresentations by omission on the part of Harnischfeger or that they suffered any detriment, the court will grant summary judgment in favor of the Defendants on their estoppel (or, as the Plaintiffs would have it, their detrimental reliance) claim.

## D. PENALTIES

Even though the court has determined that the Plaintiffs are not entitled to increased pension benefits, it may still impose a penalty upon the Plan administrator for its failure to furnish Elvin with a copy of the Plan within thirty days after he made a written request. The Krawczyks did not amend their complaint to seek this relief,[14]

---

14. Elvin also asks for penalties based upon his continuing complaint that the Defendants failed to provide him with the Plan Committee's reasons for denying his claim, or a notice of what evidence could perfect his claim, or notice of his appeal rights in violation of 29 U.S.C. § 1133. He does not allege or show that he made a demand for this information until he commenced this lawsuit in 1989—over five years after the initial administrative hearing. *Cf. Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 622 (7th Cir.1987) (statutory penalty only available when participant has affirmatively requested information).

The court ordered the Defendants to provide the required information to the Plaintiffs during remand to the Plan Committee and the Defendants complied. Therefore, the Plaintiffs have already received a remedy. Consequently, the court will not impose monetary penalties or a substantive remedy for the Defendants' noncompliance with the statutory administrative procedures. *See Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 621–22 (7th Cir.1987) ("a participant is not entitled to a substantive remedy for establishing a procedural violation on the part of the administrator").

In addition, Elvin complains that Harnischfeger failed to notify him in writing of a change in

**630**

but made the claim in their "Brief in Opposition to Defendant's [sic] Motion and in Support of Plaintiffs' Motion for: 1) a De Novo Hearing Before the Federal District Court on the Issue of Denial of Plaintiffs' Benefits; 2) $100/Day Penalty Pursuant to 29 U.S.C. 1132(c)(1); and 3) Attorney Fees." Nevertheless, the Defendants have had the opportunity to respond, so the court regards this issue as having been heard.

Section 1132(c)(1) provides that

Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title or section 1021(e)(1) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C.A. § 1132(c)(1) (West Supp.1993).

█ Under section 1132(c)(1), penalties are available only from the Plan administrator. *See VanderKlok v. Provident Life and Accident Insurance Company, Inc.,* 956 F.2d 610, 618 (6th Cir.1992). ERISA defines the "plan administrator" as:

the person specifically so designated by the terms of the instrument under which the plan is operated....

29 U.S.C. § 1002(16)(A)(1).

In this case Section 7 of the Plan provides that:

The Plan shall be administered by the Administrative Committee consisting of three (3) or more persons appointed by and to serve at the pleasure of the Board

the Plan (the exclusion of severance payments from compensation for pension purposes) and issued a misleading plan summary in violation of

of Directors of the Company. All usual and reasonable expenses of the Committee shall be paid by the Company. The members of the Committee shall not receive compensation with respect to their services for the Committee.

Affidavit of Richard W. Schulze at Exhibit B, p. 21.

█ The Krawczyks have not sued the Harnischfeger Plan Committee as a party defendant. In their Amended Complaint, they name "Harnischfeger Corporation" as the plan administrator. *See* Amended Complaint at ¶ 3. The Defendants denied this allegation in their Answers. *See* Answer of Defendant First National Bank of Chicago at ¶ 3; Answer of Defendants Harnischfeger Corporation and Harnischfeger Corporation Salaried Employees Retirement Trust at ¶ 3. Harnischfeger Corporation raised the affirmative defense that it is not a proper defendant and that the Plaintiffs had failed to join necessary parties. *See* Answer of Defendants Harnischfeger Corporation and Harnischfeger Corporation Salaried Employees Retirement Trust at ¶¶ 24 & 25. The Defendants did not reassert these defenses in response to the Plaintiffs' request for penalties. Nevertheless, the court is bound by the provisions of ERISA, so the threshold issue is whether the Krawczyks can seek penalties under section 1132(c)(1) from Harnischfeger Corporation rather than the plan administrator.

█ Other courts which have addressed the proper party issue have ruled that, under certain circumstances, the employer sponsoring an ERISA plan can be considered the plan administrator for purposes of a section 1132(c)(1) penalty claim even when, as here, the plan specifically designates a committee to act as the administrator and the Committee has actually been appointed. *See Rosen v. TRW, Inc.,* 979 F.2d 191, 192–93 (11th Cir.1992); *Law v. Ernst & Young,* 956 F.2d 364, 372–74 (1st Cir.1992). Criteria which determine whether an employer can be held liable for penalties include:

29 U.S.C. § 1024(a)(1) & (b). The Plaintiffs failed to brief or otherwise support these allegations, so they will not be addressed separately.

1. whether the committee members are appointed by the sponsoring employer;
2. whether the expenses of the committee are paid by the sponsoring employer;
3. whether the sponsoring company indemnifies the members of the plan committee for claims connected with their duties;
4. whether employee requests for information are answered by the employer on employer letterhead.

See *Rosen*, 979 F.2d at 193; *Law*, 956 F.2d at 374. The most important factor for purposes of a penalty claim is whether the employer has assumed control of the committee's information providing function. *See Law*, 956 F.2d at 374.

In this case the facts in the record indicate that Harnischfeger can be held liable for penalties. As set forth above, the Plan section governing the appointment of the administrative committee provides that Harnischfeger appoints the members who serve without compensation. Moreover, all expenses of the committee are paid by Harnischfeger.

Elvin's October 14, 1983 letter asking to examine "all documents relating to the Harnischfeger Salaried Employees' Retirement Plan" is addressed to the attention of Mr. Arlin Hackendorf, Harnischfeger Salaried Employees' Retirement Plan Administrator. *See* Transcript of Hearing Before the Pension and Investment Committee, Harnischfeger Industries, at Exhibit 7. Nevertheless, Elvin's inquiry was answered by Lloyd Clifford, Harnischfeger's corporate director of compensation, on Harnischfeger's stationery. *See Id.* at Exhibit 13. Harnischfeger's letter does not refer to its Plan Committee. Under these circumstances, and despite the Krawczyks' careless failure to sue the Plan administrator, the court concludes that Harnischfeger Corporation was controlling the flow of information to Plan participants and can be held liable for section 1132(c)(1) penalties for its failure to provide a copy of the Plan to Elvin within thirty days of his request.

 Having determined that Harnischfeger Corporation is a proper party, the court must now decide whether Harnischfeger is liable for the penalties sought. Under section 1132(c)(1), a plan administrator is obligated to provide specified information about employee benefit plans to participants or beneficiaries upon request. If the requested documents are not supplied within thirty days, ERISA allows a court to impose penalties of up to $100.00 per day. *See* 29 U.S.C.A. § 1132(c)(1) (West Supp.1993). *See also Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 621–22 (7th Cir. 1987). In this case undisputed portions of the record show that Elvin made a written request for a copy of the Harnischfeger Plan on October 14, 1983, but that he was not supplied with the document until December 7, 1983. *See* Transcript of Hearing Before the Pension and Investment Committee, Harnischfeger Industries at Exhibits 7 & 8. By that time he had already made the election to retire early and take the special early retirement benefit as a lump sum. Moreover, the company had already paid him the lump sum. *See Id.* at Exhibit 12.

 Prejudice and bad faith are not prerequisites for the imposition of penalties. They are merely factors which the district court can properly consider in exercising its discretion to impose penalties. *See Harsch v. Eisenberg*, 956 F.2d 651, 682 (7th Cir.), *cert. denied sub nom. Bihler v. Eisenberg*, — U.S. —, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992). The liquidated damages provision of subsection 1132(c)(1) dispenses with the necessity to prove actual damages. The statute commits the size of the penalty to the district judge's discretion. The court may, but need not, consider the provable injury when exercising that discretion. *See Ziaee v. Vest*, 916 F.2d 1204, 1210–11 (7th Cir.1990), *cert. denied*, 499 U.S. 959, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991).

There is no evidence in the record of bad faith on the part of Harnischfeger or that Elvin was prejudiced by not having a copy of the Plan. In making his retirement decision, Elvin was able to rely on the Plan Summary in which the definition of "compensation" does not differ in any material respect from the definition found in the Plan itself.

 It appears that Harnischfeger's failure to furnish Elvin with a copy of the Plan

within the statutory time limit was the result of negligence or indifference. Harnischfeger told Elvin that no copy of the Plan was available at the Escanaba plant, even though most of the employees there were retiring or being terminated. No other explanation was offered for the delay. Yet, it should have been obvious to Harnischfeger that time was of the essence in this situation where Elvin had to make an election before the first of the year. The Plan administrator's failure to comply with the statute governing the furnishing of information as well as its failure to comply with the notice requirements during the initial administrative procedure has led to two remands of this matter and has inordinantly prolonged this litigation. Even in a situation where a participant has not suffered a monetary loss, the court regards the administrator's statutory duty to provide information promptly to participants and beneficiaries as a serious matter in a situation where a participant must make an irrevocable election affecting the remainder of his or her life. For this reason, the court will assess a penalty of $100.00 per day for the twenty-two days of delay in responding to Elvin's request. However, because the maximum daily penalty is being exacted, the court will not also award attorney fees connected with litigating this claim. *See Garred v. General American Life Insurance Company,* 774 F.Supp. 1190, 1200–01 (W.D.Ark.1991).

### *ORDER*

For the reasons explained above, the court ORDERS that the Defendants' "Motion for Summary Judgment" (filed June 25, 1991 and renewed after remand) IS GRANTED IN PART AND DENIED IN PART. Summary judgment is granted in favor of the Defendants on all the claims raised by the Plaintiffs except the request for statutory penalties which are awarded as specified below. The May 23, 1991 decision of the Pension and Investment Committee, Harnischfeger Industries, denying increased benefits to Plaintiff Elvin Krawczyk is affirmed.

IT IS FURTHER ORDERED that the Plaintiffs' "Motion for Summary Judgment" (filed July 8, 1991 and renewed after remand) IS DENIED IN PART AND GRANTED IN PART. The motion is denied as to all claims except the request for a penalty pursuant to 29 U.S.C.A. § 1132(c)(1) (West Supp.1993). The Plaintiffs are awarded a penalty of $2,200.00 from Defendant Harnischfeger Corporation.

IT IS FURTHER ORDERED that this action is dismissed with prejudice and upon its merits with the parties to bear their own costs. Because it was necessary twice to remand this action for rehearing by the Harnischfeger Plan Committee due to that Committee's initial failure to comply with the procedural requirements of ERISA found in 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503–1(f), and because these remands prolonged and complicated this litigation, costs are denied to the Defendants.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final judgment as a separate document. This judgment shall provide that:

This action came on for hearing before the Court, Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED
that the May 23, 1991 decision of the Pension and Investment Committee, Harnischfeger Industries, denying increased pension benefits to Plaintiff Elvin Krawczyk is affirmed; all other relief requested by the Plaintiffs is denied, except that:

IT IS FURTHER ORDERED AND ADJUDGED
that Defendant Harnischfeger Corporation shall pay as a penalty the sum of Two Thousand and Two Hundred Dollars ($2,200.00) to Plaintiffs Elvin W. Krawczyk and Gladys M. Krawczyk.

IT IS FURTHER ORDERED AND ADJUDGED
that this action is dismissed with prejudice and upon its merits with the parties to bear their own costs.

Done and Ordered.