Robert L. WILLIAMS, Plaintiff,

v.

HUMANA HEALTH PLAN,
INC., Defendant.

No. 97 C 625.

United States District Court,
N.D. Illinois,
Eastern Division.

March 10, 1997.

Arthur M. Gorov, Berkson, Gorov & Levin, Ltd., Chicago, IL, for Plaintiff.

Robert J. Bates, Jr., Bates, Meckler, Bulger & Tilson, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Robert Williams, suffers from brain cancer. One of his physicians has recommended that he treat this cancer with High Dose Chemotherapy supported by Peripheral Stem Cell Rescue ("HDCT/PSCR"). To that end, Mr. Williams filed suit seeking to enjoin the defendant, Humana Health Plan ("Humana"), by requiring it to pre-authorize coverage for this procedure. The complaint also seeks a declaratory judgment that

HDCT/PSCR is a medically necessary and generally accepted surgical procedure which is within the scope of Mr. Williams' insurance plan. Humana has moved for summary judgment arguing that the clear language of Mr. Williams' insurance plan excludes coverage for this procedure.

The crux of this dispute turns on what insurance plan actually covers Mr. Williams. Mr. Williams argues that the plan covering him is evidenced by a Certificate of Coverage issued by Humana with an effective date of January 1, 1995 ("Group Plan No. 05011"). Mr. Williams' then employer, Kraft Foods ("Kraft"), provided this benefit to him as part of his employment. Humana contends that Mr. Williams' coverage under Group Plan No. 05011 terminated on December 31, 1995 and was replaced by Group Plan No. 71746 on January 1, 1996. That plan was sponsored by Alliant Food Service ("Alliant"), Mr. Williams' employer at that time.[1] Mr. Williams, however, claims that he never was sent any notice of the termination of his former plan and no certificate for the new plan. Therefore, he argues that his coverage continued under Group Plan No. 05011. Furthermore, he states that he received an insurance form from Alliant in late 1995 which stated that he need not do anything to continue with his current insurance "elections." Based on this document, Mr. Williams argues that he was led to believe that no provisions of his prior plan had been changed.

The difference between the two plans is potentially significant for Mr. Williams. The language of Group Plan No. 05011 does not specifically exclude coverage for the HDCT/PSCR procedure. A court might find its language to be ambiguous and construe it against the insurer requiring it to pay for the HDCT/PSCR procedure. *See, e.g. Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80 (4th Cir.1993). The language of Group Plan No. 71746, however, leaves little room for ambiguity because it specifically describes the HDCT/PSCR treatment in its exclusions from coverage section.

■ Both of the plans at issue are employee welfare benefit plans within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Under the statutory scheme established by ERISA and the cases interpreting it, Mr. Williams cannot pursue this claim against Humana. Although the Court is sympathetic to Mr. Williams' plight, sympathy alone cannot justify imposing liability on Humana. Humana, as the insurer, had no responsibility to notify Mr. Williams regarding the termination of Group Plan No. 05011. *P.I.A. Michigan City, Inc. v. National Porges Radiator Corp.*, 789 F.Supp. 1421, 1425 (N.D.Ill. 1992); *see also Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 141 (7th Cir.1985); *Gabler v. Minnesota Mutual Life Ins. Co.*, No. 92 C 8256, 1993 WL 338877, at *3–4 (N.D.Ill. Sept.2, 1993). "The insurer's direct relationship is with the policyholder, not the individual insureds," and therefore, the policyholder has the duty to notified insureds of any changes in coverage. *Martz*, 757 F.2d at 141. Consequently, Kraft or Alliant, but not Humana, might be held liable for the lack of notice regarding the termination of one plan and the switch to another.

■ Furthermore, Humana was not the plan administrator, as defined by ERISA, and therefore does not have the responsibility to provide Mr. Williams with a summary plan description of his coverage. ERISA requires that the administrator provide all covered employees with a summary plan description of the benefit plan and any subsequent modifications to that plan. 29 U.S.C. §§ 1021–1022. An administrator is defined as the person so designated in the plan document itself, or, if no one is designated, then the plan sponsor is the administrator. *Id.* § 1002(16)(A). The plan sponsor, in turn, is defined as the insured's employer where the benefit plan is established or maintained by that single employer. *Id.* § 1002(16)(B). In this case, the plan documents do not name a plan administrator. Therefore, the plan sponsor is the plan administrator which is Kraft, under Group Plan No. 05011, or Alli-

---

1. Apparently, Alliant was a spin-off of Kraft. Kraft sold its foodservice division, for which Mr. Williams worked, on February 13, 1995. Alliant

came into being as a separate corporation on that date, and Mr. Williams became an Alliant employee.

ant, under Group Plan No. 71746. In either case, any liability for violations of these ERISA requirements would not fall on Humana. *See Klosterman v. Western Gen. Management, Inc.,* 32 F.3d 1119, 1122 (7th Cir.1994).

 Likewise, Humana is not liable for any technical violations of the notice provisions of ERISA. Prejudice or reliance resulting from nondisclosure can occur particularly in the context of medical benefits where "[a]n employee might undergo medical treatment assuming it would be covered by a benefit plan or forego buying alternative medical insurance." *Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 793 (7th Cir.1996). Nevertheless, the injury to the employee results from the employer's failure to notify. *See id.* at 791, 793. Even if Mr. Williams can demonstrate prejudice or reliance as a result of the lack of notification about the change in plans, his injuries would be the result of Kraft or Alliant's conduct, not that of Humana.

Finally, to the extent that Mr. Williams is arguing that estoppel should be applied to prevent Humana from denying coverage, that argument also is misplaced. Estoppel requires, in part, some affirmative misrepresentation by the party to be estopped. *See Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir.1990). Mr. Williams has not pointed to any misrepresentation made by Humana. If any misrepresentation was made in this case, it was made by Alliant which sent Mr. Williams an insurance election form which may have implied that his 1995 insurance coverage would not change in 1996.