**Rita S. WITOWSKI and Deborah Tan Szarek, Plaintiffs,**

**v.**

**TETRA TECH, INC., a Delaware corporation, and Tetra Tech EM, Inc., f/k/a PRC Environmental Management, Inc., a Delaware corporation, Defendants.**

**No. 97 C 7002.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 13, 1998.

Marc William O'Brien, Dawn Carol Wrona, Faith A. Cristol, Aronberg, Goldgehn, Davis & Garmisa, Chicago, IL, for plaintiffs.

Paul Andrew Olsen, Paul B. Holmes, Ungaretti & Harris, Chicago, IL, for defendants.

## *MEMORANDUM AND ORDER*

MORAN, Senior District Judge.

Plaintiffs Rita S. Witowski and Deborah Tan Szarek brought this two-count action as beneficiaries of a third party's, Carol Adams, life insurance policy, which Adams held through her employer's, Tetra Tech EM, ERISA employee benefits plan. The plan is administered by Tetra Tech, Inc. and funded by Northwestern National Life Insurance Company. In Count I, plaintiffs allege that they are entitled to recover a life insurance benefit in the amount of $80,000 plus interest from Tetra Tech EM and Tetra Tech, Inc. (the defendants) under ERISA § 502(a), 29 U.S.C. § 1132(a). In Count II, plaintiffs allege that defendants are also liable for breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Defendants have moved to dismiss both counts.

For the reasons stated below, defendants' motion to dismiss Count I is granted. However, because in their motion to dismiss Count II defendants have relied on and attached materials outside of those contained in the complaint, we find that it is appropriate under Federal Rule of Civil Procedure 12(b) to convert that motion to one for summary judgment under Rule 56. The parties are accordingly ordered to file their respective Rule 12(M) and 12(N) statements and additional memorandums of law addressing the issues discussed below.

## *BACKGROUND*

In deciding a motion to dismiss under Rule 12(b)(6), we accept the complaint's well-plead factual allegations as true. In light of this standard, the facts are as follows:

Carol Adams (Adams) was an employee of PRC Environmental Management, Inc. (PRC–EMI) until it was purchased by defendant Tetra Tech, Inc. (Tetra Tech) in September, 1995. A subsidiary company called Tetra Tech EM, Inc. was established to take over PRC–EMI's operations. Carol Adams continued as an employee of Tetra Tech EM for a short period of time until in October, 1995, when she applied for and was granted "permanent disability" status due to a serious illness. She did not return to work again and in April, 1996, Adams died.

As part of the change in ownership, PRC–EMI underwent a change in its group life insurance plan, of which Adams was a member. Prior to the takeover, PRC–EMI used a plan that was administered by PRC, Inc., the corporate parent of PRC–EMI, and funded by a group life insurance policy issued by Prudential Life Insurance Company (Prudential). In November, 1993, Adams had named her two nephews as her beneficiaries under the plan, and although plaintiffs do not explicitly state the amount of Adams' coverage under the PRC/Prudential plan, the parties apparently agree that it was $80,000. For a short while after PRC–EMI was bought by Tetra Tech, the company continued to use the PRC/Prudential plan, by

the terms of which employees were divided into two categories: active and inactive. "Active" employees were those who were currently working for the company, whereas "inactive" employees were those who were no longer actually coming to work. In November, 1995, Tetra EM announced that effective January 1, 1996, it would be changing its employee benefit programs, terminating the old plan on December 31, 1995, and instituting a new plan to be administered by Tetra EM's parent corporation (Tetra Tech, Inc.) and funded by Northwestern National Life Insurance Company (Northwestern Insurance). Pursuant to this announcement, Carol Adams requested and received the "1996 Tetra Flex Enrollment Form." On its face, the form did not limit its applicability to active employees and it is unclear whether Adams received the Tetra Flex "Benefits Program Guide," which stated that participation in the new plan was limited to active employees (Motion, Exh.A, p. 7). Adams completed the enrollment form, naming plaintiffs Rita S. Witowski (Witowski) and Deborah Tan (Tan) as joint beneficiaries and elected coverage of one times her annual salary in addition to the base amount provided free of charge by her employer (one times her annual salary up to $50,000). Plaintiffs do not provide evidence of the amount of Adams' salary and it is thus impossible to determine the precise amount of her coverage, but the parties apparently agree that the expected benefit was $80,000. In any event, Adams submitted the form to the new plan on November 24, 1995.

On February 22, 1996, Adams received a letter on PRC, Inc. stationary addressed to EMI employees, generally informing them that their Tetra Flex Enrollment Forms had been processed, that the information received was compiled, and that a summary of their benefits was attached for their review. Any desired changes were to be called into PRC's Human Resources office. Adams' form accurately reflected the choices she had made on the enrollment form and Tetra TM began to deduct premiums for Adams' coverage from her paychecks and covered her hospital bills under the health insurance option that Adams had selected on the same form.[1]

After her death, both Adams' nephews, listed on the original enrollment form, and plaintiffs Tan and Witowski, listed on the Tetra EM enrollment form, claimed they were entitled to be paid under the PRC/Prudential plan. Plaintiffs also contacted defendants Tetra EM and parent Tetra, Inc., but they were referred back to PRC, Inc. Although PRC, Inc. and Prudential denied that they were liable under the contract (*see* Reply, Appendix, Settlement Agreement, p. 2), they ultimately settled the matter. The settlement agreement with PRC and Prudential provided that the two sets of beneficiaries would split the $80,000 benefit, with the nephews receiving $8,000 each and Tan and Witowski receiving a total of $64,000 plus interest. Both sets of beneficiaries agreed to release PRC and Prudential from any further claims, with the understanding that if they recovered any further benefits under Adams' life insurance policy, 50% of that amount would be turned over to the Black & Decker Corporation (then the owner of PRC) (Reply, Exhibit–Restitution Agreement, p. 2 ¶ 2).

There are several material facts that at this point remain unclear. Tetra Tech and Tetra EM maintain that the Tetra Flex plan was intended to cover only active employees, and that inactive employees would remain covered under the old PRC/Prudential plan until it lapsed. Defendants further claim that they made an announcement to this effect but provide no documentary or other evidence in support of this assertion. Moreover, it appears that both active and inactive employees

1. The parties appear to agree that any premium amounts Adams paid for the Tetra Flex coverage over what she would have paid for PRC/Prudential coverage have since been refunded.

were required to complete the 1996 "Tetra Flex Enrollment Form," but it is unclear why this would be so if inactive employees were clearly not intended to be covered. Was Tetra EM using the enrollment form as a means of permitting inactive employees to update or modify their existing and continuing coverage under the PRC/Prudential plan? If so, why were inactive employees not simply sent a PRC benefits enrollment form? It is also unclear whether inactive employees like Adams were given a copy of the Tetra Flex program book, the only document we have been provided that states inactive employees would not be covered under Tetra Flex. In addition, aside from the change in beneficiaries, plaintiffs have failed to explain whether the coverage Adams elected on the Tetra Flex enrollment form differed in any material way from the coverage she had under the original PRC/Prudential plan. Did she opt for a higher dollar-value of life insurance? Were her premiums higher? Did her health insurance provider change?

Tetra Tech and Tetra EM have failed to explain why Adams was sent a letter confirming her enrollment in the Tetra Flex plan, and why the plan accepted her premiums and paid her medical bills. If such actions were accidental, did the plan ultimately refund her premiums and recover the payments made for her medical expenses? If so, when and how did this occur? Who, then, ultimately paid those bills, the PRC/Prudential plan?

Finally, although plaintiffs have provided copies of the settlement documents they entered into with Adams' nephews and the parties to the PRC/Prudential plan, they fail to explain why they are seeking an additional $80,000 payment in this action. The PRC/Prudential plan paid out $80,000, the amount of life insurance that Adams apparently intended to purchase, of which plaintiffs received $64,000. The maximum benefit plaintiffs could have expected as Adams' beneficiaries would have been the full $80,000 amount listed on the Tetra Flex plan, the only plan in which Witowski and Tan were named as beneficiaries. It thus seems that if plaintiffs have suffered any damage at all, it is the $16,000 amount paid to Adams' nephews as part of the settlement. We also note that although in the settlement documents the PRC/Prudential plan denied that it was liable, it paid 100% of the disputed claim—an action usually indicating acceptance of responsibility.

## *ANALYSIS*

### A. *Standard of Review*

In order to have a claim dismissed under Rule 12(b)(6) the moving party must meet a high standard. The purpose of a motion to dismiss is to test the sufficiency of a complaint, not the merits of the action. *Triad Associates, Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir. 1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). A complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). On the other hand, in order to withstand a motion to dismiss the complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988). Generally, "mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985).

### B. *Action to Recover Benefits: 29 U.S.C. § 1132(a)(1)(B)*

In Count I, plaintiffs Tan and Witowski bring an action under ERISA, 29 U.S.C. § 1132(a)(1)(B), claiming that defendants Tetra Tech and Tetra EM are liable for unpaid benefits under the Tetra Tech/Northwestern Insurance Plan. Defendants respond that plaintiffs have sued the wrong party because ERISA requires

that a recovery-of-benefits action be brought against the benefits plan itself and not the employer or the plan's administrator.

Under ERISA, an employee benefit plan is an entity that may sue or be sued in its own right. 29 U.S.C. § 1132(d)(1). However, the circuits disagree on what other parties are subject to suits for benefits. Many jurisdictions hold that the proper defendant in such a suit is either the plan itself or the plan's administrator or trustee exercising management over and control of the plan. *Terry v. Bayer Corp.*, 145 F.3d 28, 34–35 (1st Cir.1998) (the proper party defendant in a § 1132(a)(1)(B) action for benefits under an ERISA plan is the party that controls administration of the plan, *i.e.*, by reserving the power to decide disputes, and not a third party service provider); *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir.1998) (holding that "[i]n [a] recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable"); *Mitchell v. Eastman Kodak Co.*, 113 F.3d at 433 (3d Cir.1997) (permitting recovery of benefits action under § 1132(a)(1)(B) against the plan administrator, which had discretionary authority over claims); *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir.1997) (same). The court's focus in these cases is on what entity has discretionary decision-making authority over the plan's benefits. Thus, such jurisdictions permit actions to be brought against a beneficiary's employer when the employer is the plan administrator and thus bears responsibility for, and has control over, the plan itself. *See Garren*, 114 F.3d at 187.

The Seventh Circuit, however, has adopted the position that only the plan as an entity may be sued. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1491 (7th Cir.1996) (stating that ERISA permits suits to recover benefits "only against the plan as an entity," and thus suits against non-plan defendants such as medical personnel are not allowed unless liability against such person is established under another part of the statute), *quoting Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir.1985) (*per curiam*); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir.1997) (holding that ERISA permits suits to recover benefits only against the plan as an entity, and thus the beneficiary had erred by suing her ex-husband's employer and plan administrator when proper party would have been the benefits plan itself). Although the Seventh Circuit has yet to discuss the issue at any length, in *Gelardi* the Ninth Circuit reasoned that by its plain language ERISA permitted only two types of actions: actions against the plan as an entity for the recovery of benefits under § 1132(a)(1)(B), and actions for breach of fiduciary duty under § 1109(a) and § 1105(a). The court thus found that plaintiff had erred in naming as defendants her employer and the plan administrator, neither of which were the plan itself. *Gelardi*, 761 at 1324.

■ We are of course bound by the Seventh Circuit's approach in this matter.[2] Plaintiffs have sued not the plan as an entity but Tetra Tech, the plan administrator, and Tetra EM, the beneficiary's employer at the time of her death. Defendants claim that plaintiffs erred in naming these parties, and we must agree. Although the circuits are split on the issue of who is a proper defendant, the Seventh Circuit has made its position clear: only the plan as an entity is the appropriate party to sue. We further observe that even under the other circuits' approach, it

2. Although, cases adopting both sides of this dispute have been appealed to the Supreme Court, it has declined review. *See Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1287 (9th Cir.1990) (quoting *Gelardi) cert. denied*, 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991) and *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.1988) (permitting benefits recovery action against the party controlling administration of the plan), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988).

is not clear that Tetra Tech and Tetra EM would be proper defendants. In those opinions the courts focus on the nature of the plan administrators' and employers' involvement in the plan, and in every instance where the suit is allowed to proceed observe that these parties exercise discretionary authority over the administration of the plan and the provision of benefits. In this case, although Tetra Tech is named as the plan administrator, plaintiffs admit through their own filings and attached documents that Northwestern Insurance, the service provider, is the party responsible for processing and deciding the merit of the beneficiaries' claims, and exercising the "final discretionary authority to determine all questions of eligibility and status and to interpret and construe the terms of [the policies]" (Plfs. Resp., Exh.A, Summary Plan Description, p. 16).

C. *Breach of Fiduciary Duty: 29 U.S.C. § 1132(c)*

In Count II, plaintiffs claim defendants Tetra Tech and Tetra EM are liable for breaching their fudiciary duty to provide information to beneficiaries under 29 U.S.C. § 1132(c). They assert that defendants' actions led Adams to believe that she was covered by the Tetra Flex plan and that defendants are now estopped from denying such coverage. Specifically, they argue that by supplying Adams with a Tetra Flex enrollment form, confirming her enrollment in the plan, deducting the premium costs from Adams' paycheck, including the amount to cover additional life insurance, and paying her hospital and medical bills, defendants violated a duty to inform Adams that she was not and could not be covered by the new plan. Defendants move to dismiss, arguing that due to her ineligibility as an inactive employee, Adams was never a participant in the plan. They also argue that they had no fiduciary obligation to inform Adams that she was not eligible to participate in the Tetra Flex plan. Because they made no affirmative misrepresentation about her eligibility they cannot be held liable for a breach of fiduciary duty. Finally, they argue that even if plaintiffs have stated a prima facie case for breach of fiduciary duty, ERISA permits only equitable relief for fiduciary violations and thus plaintiffs' claim for pecuniary relief must fail.

Because in their motion to dismiss Count II defendants have included and relied on documents not contained in the complaint, and because it is impossible to resolve this dispute without reference to such documents, we convert the motion to one for summary judgment under Federal Rule of Civil Procedure 56. The parties are thus ordered to submit Rule 12(M) and 12(N) statements of facts which should address the factual omissions we pointed out above. In addition, we feel that a clarification of the issues might assist the parties in constructing their supporting memorandums of law.

Plaintiffs argue that Tetra Tech and Tetra EM are estopped from denying coverage. The Seventh Circuit has held that pursuant to federal common law and under certain circumstances an ERISA fiduciary [3] may be estopped from denying coverage for expenses that might ordinarily be exempt or to an otherwise ineligible beneficiary. *See Black v. TIC Investment Corporation,* 900 F.2d 112, 115 (7th Cir.1990) (permitting estoppel principles to apply to claims for benefits under unfunded single-employer welfare benefit plans under ERISA). It is unclear, however, whether the same theory can be used in a suit to recover benefits from a single-employer pension, as opposed to welfare, fund. Even if we assume that estoppel principles apply in such a situation, plaintiffs need to more thoroughly address the elements of the claim. In an ERISA equitable estoppel claim plaintiffs must show:

(1) [T]he opposing party knowingly misrepresented or concealed a material fact;

3. In considering this motion, because neither party contests the issue, we will assume, without deciding, that the defendants constitute fiduciaries under ERISA.

(2) the complaining party, not knowing the truth, reasonably relied on that misrepresentation or concealment; (3) the complaining party suffered detriment; and (4) the complaining party had no knowledge or convenient means of ascertaining the true facts which would have prompted it to react otherwise.

*Krawczyk v. Harnischfeger Corporation,* 41 F.3d 276, 280 (7th Cir.1994) *citing Loyola Univ. of Chicago v. Humana Ins. Co.,* 996 F.2d 895, 902 (7th Cir.1993). It is generally held that defendants' misrepresentation must be affirmative and in writing. *Schmidt v. Sheet Metal Workers' Nat. Pension Fund,* 128 F.3d 541 (7th Cir.1997). Here we must decide whether these requirements can be met by defendants' conduct, an issue that has not received much discussion. It does not appear that sending an insurance application form to an ineligible employee alone constitutes a sufficient misrepresentation to deny coverage. *See Schmidt,* 128 at 546 ("we do not think the writing requirement was satisfied here by the fact that [the fiduciary's employee] subsequently mailed to the [insureds an application that the employee stated would allow a change in the insured's death beneficiary when in fact the form would accomplish no such change]"); *Williams v. Humana Health Plan, Inc.,* 957 F.Supp. 1029, 1031 (N.D.Ill. 1997) (mentioning that sending an insurance election form to ineligible employee could have implied that he could use the form, but not deciding whether this constituted a misrepresentation by the fiduciary). In addition, courts are uncertain about whether a fiduciary's silence, rather than active concealment, can constitute a misrepresentation. *See Krawczyk v. Harnischfeger Corp.,* 869 F.Supp. 613, 628 (E.D.Wis.1995) *aff'd* 41 F.3d 276 (7th Cir. 1994).

In this case, however, Adams not only received an enrollment form but was sent a statement confirming her enrollment, received benefits under the Tetra Flex plan for which she was supposedly ineligible and paid premiums to the same for a period of at least four or five months. A recent case in this jurisdiction has determined that facts similar to these are sufficient to survive a motion to dismiss premised on defendants' lack of misrepresentation. *See The Estate of Cencula v. John Alden Life Insurance Company,* 1998 WL 719937, *4 (N.D.Ill., October 6, 1998) (Slip Opinion) (holding that a finding of estoppel by conduct under ERISA might be appropriate where the insured received a letter welcoming her to the plan, received more than seventy-nine payments under plan for $60,000 in medical bills, and paid plan premium payments for a ten-month period before being notified of ineligibility due to pre-existing condition). The *Cencula* court acknowledged that, in isolation, none of the individual events on which plaintiff relied would be enough to constitute a misrepresentation, but found that all of the factors together could constitute a sort of hybrid estoppel claim, based on both the conduct and writing of the defendant. *Id.* The *Cencula* court also distinguished its opinion from *Vershaw v. Northwestern National Life Ins. Co.,* where the Seventh Circuit considered similar conduct by the plan administrator, albeit to a much lesser degree, and concluded that the combination of the acts were not tantamount to a misrepresentation. 979 F.2d 557 (7th Cir.1992) (three erroneous payments to an ineligible employee were not sufficient to constitute a misrepresentation of coverage where two payments were for three dollar prescriptions and one was for a $400 medical test).

■ We agree that in some limited instances a fiduciary's extensive course of conduct appearing to affirm an insured's participation in a certain benefits plan could constitute a misrepresentation about the plan's coverage or beneficiary's eligibility for estoppel purposes, particularly where the beneficiary foregoes the opportunity to join an alternative plan under

which he or she would be covered. In this case, however, defendants rely on the Tetra Flex benefits explanation package, which unambiguously states that inactive employees were not eligible to participate in the plan. Although we would hesitate to rule that an employee notified of her ineligibility could overcome a plan's clearly stated coverage limits simply by applying for prohibited insurance, it is not clear that Adams received the information book and defendants have produced no other evidence that she was informed that despite her apparent enrollment in the Tetra Flex plan her coverage would in fact continue under the old PRC/Prudential plan. Moreover, it is possible that Tetra Flex's actions in sending her a confirmation form accepting her premiums and paying her medical bills, could alone rise to the level of misrepresentation.

Even if these actions amounted to a misrepresentation, however, plaintiffs need to be more specific about what detriment they claim to have suffered. They argue that they are entitled to $80,000—the full amount of the Tetra Flex benefit—apparently on the theory that Adams was covered by both Tetra Flex and the PRC/Prudential plan. This position is clearly untenable. There is no evidence that by signing the new plan's enrollment form Adams believed she was going to get double coverage and such a belief would have been unreasonable in light of the circumstances. Moreover, plaintiffs were named as beneficiaries only on the second plan and cannot logically assert that they were entitled to the benefits under both. Thus, plaintiffs are beneficiaries either under the PRC/Prudential plan or the Tetra Flex plan, but not both. At this point, the evidence indicates that everyone involved believed that Adams' life insurance was with PRC/Prudential. Plaintiffs originally sought to recover from the old plan; Tetra EM referred plaintiffs to that plan upon Adams' death; and the plan paid 100 cents on the dollar in settlement, where plaintiffs recovered $64,000. In this scenario, the only detriment that Adams, and consequently plaintiffs, could have suffered as a result of Tetra Flex's misleading conduct, is that $16,000 of the amount that Adams had intended to go to the plaintiffs was paid to Adams' nephews because Tetra EM's handling of the change in plans was poorly executed and left the nephews with a colorable, albeit weak, claim against the death benefit.[4] Thus, if as plaintiffs claim Tetra EM and Tetra Tech are estopped from denying that plaintiff was enrolled in Tetra Flex, the most they could expect to recover at this point is $16,000 (plus interest), or the amount of the benefit they have yet to receive. Beyond that, they have suffered no detriment. In fact, if plaintiffs' position is correct, the party that has suffered is the PRC/Prudential plan, which according to plaintiffs theory in this case would not have been liable for any portion of the benefit whatsoever, a position that plaintiffs clearly did not take in their earlier negotiations with the old plan. In responding to defendants' motion for summary judgment, plaintiffs should address these issues.

## *CONCLUSION*

For the reasons stated above, defendants' motion to dismiss Count I is granted, and the motion for Count II is converted to a Rule 56 motion for summary judgment. Defendants should file their motion by December 3, 1998, plaintiffs to respond by December 17, 1998, and defendants to reply by December 30, 1998.

4. We are not told the basis of the nephews' claim. If it was that the Tetra Flex form could not change the beneficiary designations for PRC/Prudential plans, it would appear that any claim here would have to be based on the use of that form.